MARGARET C. RAINAUD, WILLIAM J. RAINAUD, Jr., AND MARGARET RAINAUD. PLAINTIFFS-APPELLANTS, v. EDITH A. THORNE, DEFENDANT, AND DOMINICK J. MULLANEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 18, 1960—Decided November 28, 1960.

272

Before Judges PRICE, GAULKIN and FOLEY.

*Mr. John C. Givens* argued the cause for plaintiffs-appellants (*Messrs. Parsons, Labrecque, Canzona & Blair,* attorneys).

*Mr. William F. Harth* argued the cause for defendant-respondent (*Messrs. McKeown, Harth & Enright,* attorneys; *Mr. William F. Harth,* of counsel; *Mr. Vincent D. Enright, Jr.,* on the brief).

The opinion of the court was delivered by

PRICE, S. J. A. D.  In an automobile negligence case, tried before a judge and jury in the County Court, plaintiffs seek to reverse a judgment entered in favor of defendant Mullaney on his motion for dismissal at the end of plaintiffs' case.  *R. R.* 4:42–2(*b*)  Three cars were involved in an accident on which the action was based: one, an automobile owned by plaintiff Margaret C. Rainaud, operated by her son plaintiff William J. Rainaud, Jr., and in which plaintiff Margaret C. Rainaud, his wife, was a passenger; the others operated respectively by defendants Edith A. Thorne and Dominick J. Mullaney.  Plaintiffs, Margaret C. Rainaud and William J. Rainaud, Jr., suffered serious personal injuries, and the automobile owned by plaintiff Margaret Rainaud was wrecked.  The instant suit was brought to recover damages therefor.  William J. Rainaud, Jr. also sued *per quod.*  A judgment in favor of plaintiffs against defendant Thorne, entered on the verdict of the jury, is not the subject of appeal.

In assaying the propriety of the trial court's action it is to be observed that the court was obliged to accept as true all evidence supporting the position of plaintiffs and to accord to them the benefit of all inferences in their favor which might "logically and legitimately be drawn therefrom." *O'Donnell v. Asplundh Tree Expert Co.*, 13 *N. J.* 319, 328 (1953).  So considered, the record reveals that on December 30, 1956 at approximately 11:30 P. M., the Rainaud automobile was being operated in a southerly direction on the western side of Route 35, a four-lane highway, each lane measuring ten feet in width.  In the area of the accident a single white line marks the center of the road.  The posted speed limit is 40 miles per hour.  Rainaud, who had been traveling in the outside, southbound lane of the highway, intended to make a left turn across the highway and enter Frost Avenue which intersects the highway on the east.  He gave an appropriate signal with the car's directional light, crossed to the inside, southbound lane, and brought his car

to a halt opposite the Frost Avenue intersection. The front wheels of his car were turned slightly to the left. Its lights were functioning and he testified that he believed he had his "brakes on." It was his intention, when cars moving on the highway in the northbound lanes had passed, to cross those lanes and enter Frost Avenue aforesaid.

The proofs further showed that the Mullaney car, then being operated in a northerly direction on the inside, eastern lane of the highway, was one of the cars the passage of which Rainaud awaited. Rainaud observed the moving Mullaney car when it was approximately 100 feet away, and instantaneously thereafter the rear of the Rainaud car was struck with "terrific" force by the Thorne automobile, traveling in the inside, southbound lane. Rainaud testified that at the moment of that impact the Mullaney car was approximately 80 feet away. The Thorne automobile struck the Rainaud car with such force as to drive the latter vehicle in a southeasterly direction into the northbound lanes of the highway and into the path of the Mullaney car, which struck the Rainaud car on its right side. Rainaud testified that as his car was propelled into the northbound lanes, the Mullaney car was "something less than 80 feet" distant (how much less he was unable to estimate); that his car had ceased moving momentarily before the Mullaney car hit it; and that at the moment of impact with the Mullaney vehicle it was at an angle across the inside, northbound lane with "a slight part of it" in the outside lane. Skid or tire marks of the Mullaney car were visible on the road surface for a distance of 24 feet south of the point of its collision with the Rainaud automobile.

The trial court held that there was no evidence from which it could legitimately be inferred that Mullaney was guilty of any negligence proximately causing the collision between his automobile and the Rainaud car; that it was clear that, without warning, the Rainaud car was propelled into the path of the Mullaney car and that as far as Mullaney was concerned the collision was unavoidable.

In challenging the propriety of that ruling, appellants contend initially that the evidence would have justified a finding that Mullaney was traveling in the "inside" or "passing" northbound lane at a time when there was no nearby car using the outside, northbound lane; that because thereof "the jury could have found that Mullaney was violating *N. J. S. A.* 39:4–88 at the time this accident occurred." The cited statute provides in part as follows:

"When a roadway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:

a. A vehicle shall normally be driven in the lane nearest the right-hand edge or curb of the roadway when that lane is available for travel, except when overtaking another vehicle or in preparation for a left turn."

Collaterally, appellants urge that, even though it might be concluded that Route 35 was not marked as described in the aforesaid statute and that consequently no statutory violation existed, "the fact that Mullaney was operating his vehicle in a normal passing lane when there were no cars in the right-hand lane would be a factor which the jury could consider in determining whether or not Mullaney was guilty of negligence."

We find no merit in the above contention. Apart from the fact that the application of the provisions of the cited statute is debatable, as Route 35 had not "been divided into clearly marked lanes for traffic" and the white center line, dividing northbound and southbound traffic, was the only marker, the basic factor is that the course of travel pursued by Mullaney had no bearing whatever on his alleged negligence. In resisting Mullaney's motion to dismiss, appellants advanced the theory that, as their car was propelled across the northbound "fast lane" only so far that "a slight part of it" was in the "slow lane," had the Mullaney automobile been occupying the latter lane, it might have passed the Rainaud vehicle without incident; or that if the accident "had occurred it would be of a much less serious nature."

This is pure speculation. In justice it should not be permitted to distort the proofs from which, in our judgment, the only conclusion reasonably to be drawn is that, through no fault of plaintiffs or of Mullaney, the Rainaud car, without warning, was catapulted into the northbound lanes and into the path of the Mullaney automobile. The trial court properly refused to permit the jury to speculate that had Mullaney been in another part of the highway the second collision might not have occurred. *Shellhammer v. Lehigh Valley Railroad Co.*, 14 *N. J.* 341, 344–345 (1954).

Appellants next urge that the proofs justified an inference that Mullaney was not driving his automobile within proper speed limits as he approached "the intersection of Frost Ave." In this connection they cite the provision of *N. J. S. A.* 39 :4–98 requiring a motorist to "drive at an appropriate reduced speed when approaching and crossing an intersection  *  *  *." In support of this contention they also stress the existence of the aforesaid skid marks, the force of the impact and the damage to the Rainaud automobile. They cite *Greenfield v. Dusseault*, 60 *N. J. Super.* 436, 440 (*App. Div.* 1960), affirmed 33 *N. J.* 78 (1960), as authority for their contention. In that case the court said: "high speed can be inferred from the force with which he [defendant, Dusseault] smashed into the rear of plaintiff's car."

There is no doubt that a jury may infer speed from physical facts notwithstanding the absence of direct testimony, but whether the facts justify such an inference must realistically be determined in each case. In *Greenfield, supra,* it was shown that plaintiff's car had been struck so hard by defendant's automobile that "it had been jolted" through a "12-foot center island opening and across and free of the two eastbound lanes—a trajection of 'approximately 40, 45 feet.'" Moreover, although defendant Dusseault testified that "he had applied his brakes before the collision, his car could not be stopped until it was '50 to 100' feet past the point of impact." *Greenfield, supra,* 60 *N. J. Super.,* at *pp.* 440–441.

No such situation exists in the instant case. Rainaud, the sole eyewitness of the accident to testify, and whose attention, as aforesaid, was focused on the oncoming Mullaney automobile, gave no testimony whatever that it was being operated at excessive speed. Although the Rainaud car was moved by the impact with the Mullaney vehicle, there is no proof of the extent of such movement. Mullaney's car did not leave the highway. No inference that Mullaney was negligent can be drawn from his skid or tire marks. The proofs indisputably established that before the Thorne car struck the Rainaud car the Mullaney automobile was so close to the intersection that Rainaud was awaiting its passage. If, without warning to Mullaney, the Rainaud car was thrown into his path when he was "less than 80 feet" distant, the only reasonable inference to be drawn from the existence of the skid marks is that they afford striking evidence of Mullaney's effort, in an emergency, to avoid an imminent collision. They not only do not import inordinate speed, but, of greater significance, no inference may legitimately be drawn from the proofs that the rate of motion of the Mullaney car had any proximate relationship to the happening of the accident. Neither may the damaged condition of the Rainaud car justify an inference that Mullaney was driving at an excessive rate. Rainaud testified that the Mullaney car struck his car at the "rear section of the front door, the back door and the rear fender." It had just been struck by the Thorne car with "terrific" force in the "rear right section." The collisions reduced the Rainaud car to junk. Separately to attempt to define the nature and extent of the damage due to the respective collisions would be pure guesswork. To go further, as urged by appellants, and infer from the testimonial and photographic description of the wrecked car that immoderate speed of the Mullaney automobile was causally related to the accident, would be conjecture in which the trial court rightly refused to permit the jury to indulge.

Appellants rely heavily on *Maddi v. Lindberg,* 12 *N. J. Super.* 248 (*App. Div.* 1951), to support their contention that the trial court erred in granting the involuntary dismissal in favor of Mullaney. The factual situation in that case varies so greatly from that existing in the case at bar that it may not properly be considered as supporting appellant's contention.

In *Maddi* plaintiff was a passenger in an automobile coupe driven by defendant Lindberg in an easterly direction on the highway. At the time of the accident it was raining, the road surface was wet, and Lindberg drove his automobile so negligently that it "skidded along slippery trolley tracks and 'spun around' in the opposite lane used by vehicles heading west." At that time plaintiff observed an Autocar truck driven by defendant Anderson "about 100 feet away traveling west about 35 or 40 miles per hour. Immediately thereafter the * * * truck struck" the car in which plaintiff was riding and injured him. *Maddi,* 12 *N. J. Super.,* at *p.* 251. We reversed the trial court's action granting the motions of involuntary dismissal in favor of both Lindberg and Anderson. With reference to Anderson's motion for dismissal we stated:

"While the testimony as to the Autocar truck was not as persuasive as that referable to the coupe, we are nonetheless satisfied that it was legally sufficient to withstand the motion for dismissal. Accepting the plaintiff's testimony and the inferences therefrom, the Autocar truck was being driven at a high rate of speed despite the adverse condition of the road, and although it was 100 feet away when the coupe first appeared on the west lane it was not brought to a stop within time and struck with sufficient force to cause extensive damage. A jury could properly find that the Autocar truck was being driven without due care and its negligent operation was a contributing cause of the accident and injury. * * *" *Maddi,* 12 *N. J. Super.,* at *pp.* 251–252.

No comparable facts, evincing negligent operation of the Mullaney car, are disclosed by the record before us. No "high rate of speed" is asserted. No "adverse condition of the road" was present. Mullaney was "something less than

80 feet" distant when Thorne pushed the Rainaud automobile into his path. Rainaud could not estimate the distance any more accurately than as above stated. The fact that the Mullaney car was very close to plaintiff's car as it was thrown into the northern lanes accounts also for plaintiff's inability to amplify his statement that his car had come to a stop in the northbound lanes before it was hit. The only logical inference to be drawn is that the whole action was instantaneous.

The facts in the case at bar bear far greater similarity to those revealed by our opinion in *Mijon v. Acquaire*, 51 *N. J. Super*. 426 (*App. Div.* 1958), certification denied 28 *N. J.* 146 (1958). In that case, arising out of "a four-vehicle accident," we upheld the action of the trial court in granting a judgment of dismissal in favor of one of the defendants, a bus driver into whose path the Mijon car was pushed from an intersecting street by the car of another defendant. We there held:

"Galdi [the bus driver] was without a doubt confronted with an emergency,—as we have said, no driver could reasonably be expected to foresee such an event happening. There is nothing to show that he was in any way responsible for the emergency. It was created, not by any tortious conduct of his, but entirely by that of another. The existence of an emergency and the responsibility for its creation are not questions for the jury where they can elicit but one response from reasonable minds. *Harpell v. Public Service Coordinated Transport*, 20 *N. J.* 309, 317 (1956). We concur in the trial judge's conclusion that but one such response was possible here.

There remains the matter of whether there was a jury question as to the reasonableness of Galdi's actions in the split second after the car started toward him and the emergency arose and before the collision. * * *

It is most difficult later to recall with any accuracy thoughts or actions, necessarily of a reflex nature, which take place under emergent conditions during a minute lapse of time, even if one was really conscious of them at the time. All testimony, especially attempts at detailed cross-examination, concerning them must be considered with such in mind. * * * We are not impressed with the suggestion that he [Galdi] should have applied his brakes hard at some undefined earlier point within this hardly measurable time period. Any evidence leading to this contention is at most

a mere scintilla. Such splitting of hairs is not only physically unreasonable, but even if earlier action could have been taken, it seems quite improbable that a collision would thereby have been avoided. We entirely agree with the trial judge that no 'reasonable mind could come to the conclusion that there is any evidence here of negligence on the part of the bus driver.' He did not weigh the evidence in any improper sense and there was no jury question." *Mijon*, 51 *N. J. Super.*, at *pp.* 443–445.

The language there used fits the present case. At most there was but a "mere scintilla of evidence" to support plaintiffs' claims against Mullaney. In such a situation it was the duty of the trial court to grant the motion for dismissal. *Cf. Rivera v. Columbus Cadet Corps of America,* 59 *N. J. Super.* 445, 449 (*App. Div.* 1960), certification denied 32 *N. J.* 349 (1960).

The judgment of the trial court is affirmed.